# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-0653-PAB-MLC

BANK OF NEW YORK MELLON, THE,

      Plaintiff,

v.

RICHARD A. CUEVAS,
ALISHA R. CUEVAS,

      Defendants.

## ORDER

Magistrate Judge Mark L. Carman

      This is an action for deficiency judgment. The case is before the court on the referred motion (doc. 44) of Plaintiff Bank of New York Mellon (the "Bank") for summary judgment against the *pro se* Defendants Richard Cuevas and Alisha Cuevas. For the following reasons, pursuant to Federal Rule of Civil Procedure 56(e), the court gives the Bank an opportunity to supplement the record before the court makes its recommendation on the motion.

      The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record … or showing that the materials cited do not establish the … presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). Although both Defendants answered the complaint (in April 2017, as to Ms. Cuevas in Docs. 8

and 13, and June 2017 as to Mr. Cuevas, Doc. 25), appeared in telephone conferences (see minutes, docs. 54, 55 and 56), and participated in settlement negotiations with the Bank after it filed its motion for summary judgment, neither Defendant responded to the motion.

However, even in the absence of a response, the court must review whether the movant has shown it is entitled to judgment as a matter of law.

> [A] party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party. The district court must make the additional determination that judgment for the moving party is "appropriate" under Rule 56. … The court should accept as true all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment.

*Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir. 2002). "By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion." *Id.* Thus, both Defendants waived "the right to respond or to controvert the facts asserted" in the Bank's motion, but if the Bank has not supported a material fact, the court cannot grant summary judgment.

The Bank seeks a deficiency judgment against Defendants jointly and severally in the amount of $111,985.72. The Bank recognizes in its motion it "must establish the amount of the debt, the sale price, that the sale price was applied to the debt, and the resulting deficiency." *Nat'l Canada Corp. v. Dikeou,* 868 P.2d 1131, 1134 (Colo. App. 1993). *See* Doc. 44 motion at p. 4 ("lender must establish the total debt, sale price and the deficiency after applying the sale proceeds").

As to the first element – the amount of the debt – the Bank is entitled to include in the debt at the time of the foreclosure sale the outstanding principal, accrued interest, and late charges. Doc. 44-2 (promissory note) at p. 3 ¶ 6. The promissory note also provides:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its *costs and expenses in enforcing this Note to the extent not prohibited by applicable law.* Those expenses include, for example, *reasonable* attorneys' fees.

Doc. 44-2, Promissory Note at p. 2 of 3, ¶ 6(E) (emphasis added). The deed of trust provides:

> If (a) Borrower fails to perform … then Lender may do and pay for whatever is *reasonable or appropriate* to protect Lender's interest in the Property and rights under this Security Instrument …. *Lender's actions can include, but are not limited to:* … paying *reasonable* attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument. * * * *Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.*

Doc. 44-2, Deed of Trust at p. 8 of 15, ¶ 9 (emphasis added).

Colorado law limits the lender's expenses – with some possible exceptions regarding expenses in the foreclosure process itself – to those which are reasonable or appropriate. C.R.S. § 38-38-107. The statute governing the Bank's bid likewise restricts the lender's additional costs to "estimated *reasonable* costs and expenses of holding, marketing, and selling the property, net of income received." C.R.S. § 38-38-106(6) (emphasis added). *Cf., National Canada,* 868 P.2d at 1139 (remanding for determination of reasonableness of the attorney fees and costs bank sought in deficiency action). *See also San Miguel Basin State Bank v. Oliver,* 748 P.2d 1342, 1345–46 (Colo. App. 1987) (reversing and remanding deficiency judgment in part because there was no evidence that the attorney fees added to the debt in foreclosure were reasonable); *In re Lederman Enterps., Inc.,* 106 B.R. 674, 677–78 (Bankr. D. Colo. 1989) ("In general, Colorado has recognized the right of lenders to have *reasonable* costs and fees allowed in connection with foreclosure actions," emphasis added).

*As to Mr. Cuevas,* the Bank does not need evidence to support the amount of the debt. Mr. Cuevas failed to answer the Bank's requests for admission. The certificate of service on the requests states the Bank served them to Mr. Cuevas by U.S. mail at the mailing address he has

given for use in this case, and by email to his gmail account. Doc. 44-6 at p. 9. Counsel for the Bank advised Mr. Cuevas, by mail and email, that it had not received answers to the requests for admission within their due date and requested answers by September 30, 2017. On September 29, 2017 Mr. Cuevas emailed the Bank's counsel, stating he would send responses in a few days. But the Bank never received them. Doc. 44-5, Affidavit of Taylor T. Haywood ¶¶ 3-5. He thus has admitted all facts which the Bank requested him to admit therein. Fed. R. Civ. P. 36(a)(3), (b). This includes the total amount of the debt. Doc. 44-6 (request to admit he "owed the total amount of $473, 235.72 on the loan as of October 19, 2016").

*As to Ms. Cuevas,* however, the Bank does not point to any materials in the record or otherwise that would establish she has agreed, conceded or waived the right to challenge the amount of the debt, including whether fees were reasonable and appropriate. If the Bank did not present facts on this issue in its motion, her failure to respond does not waive the right to dispute that issue.

The Bank presents the affidavit of Raisuli Ortiz, a litigation manager at the company that serviced the Bank's loan to the Defendants, Bayview Loan Servicing, LLC. Doc. 44-1 (Ortiz Aff.). The affidavit states that based on a review of Bayview's business records:

> The Cuevases owed $473,235.72 as of the October 19, 2016 foreclosure sale, as itemized on the bid letter BoNYM's foreclosure counsel submitted to the El Paso County public trustee before the sale. A true and correct copy of BoNYM's bid letter is attached as Exhibit 5, as well as a copy of the payoff calculation totals good through October 19, 2016, taken from Bayview's business records, which support the bid amounts.

Doc. 44-1 Ortiz Aff. ¶ 10. However, the referenced "payoff calculation[s]" do not actually calculate or explain the amount of indebtedness the Bank asserted in the bid letter.[1] The records

---

[1] For instance, the promissory note states an annual interest rate of 6.75%. But the Bank does not show how applying that rate to the outstanding principal for the time period January 2011– October 19, 2016 results in the $106,450 stated in the bid letter. The note also provides late

4

attached to the Ortiz affidavit simply state the same amounts of principal, interest, late charges, and other fees and costs as in the bid. For example, the largest expense listed in the bid letter is for "[p]rior litigation attorney fees and costs" in the amount of $65,975.36. Doc. 44-2 at p. 48 of 76. The attached records describe attorney fees paid to "ATAKERMAN" but do not describe the work beyond "lit atty fees" or "lit atty costs." Some of the entries for "litigation fees" do not identify the payees or the subject. *Id.* at pp. 50-56. Other line items also lack sufficient explanation to enable review under the governing documents (*e.g.,* "escrow advances" of over $14,000 and a "corporate advance" of over $3200). Nothing in the record explains the reasonableness or appropriateness of any of the fees and costs the Bank included in the debt.

Also, although the court has no obligation to comb the record, the court notes Ms. Cuevas's answers to the Bank's requests for admissions and interrogatories. Docs. 30, 31 (filed September 14, 2017). [2] Ms. Cuevas denied a request to admit the amount of the debt, stating "I have asked BONY for the breakdown of fees and have received no reply or correspondence []on this matter." Doc. 30 at p. 2, ll. 23-24. *See also* Doc. 31. at p. 2, ll. 16-17 (response to interrogatory no. 14 stating that "[u]pon asking the Bank what was owed I have never received any correspondence [as] to what was owed."). In short, Ms. Cuevas has not conceded the amount of the debt, and the Bank has not yet supplied evidence of the appropriateness of that amount.

The court is not aware of any presumption in the Bank's favor that would permit it to obtain summary judgment due to Ms. Cuevas's failure to respond. The foreclosure order and resulting foreclosure records do not establish the amount of the debt, but only what the Bank asserted to be that amount. Public trustees are not responsible for reviewing that issue. C.R.S.

---

charges of 5.0% on each overdue payment, but the Bank does not state how many monthly payments were overdue to arrive at the $3409 stated in the bid letter.

[2] Ms. Cuevas should not have filed such discovery materials (Fed. R. Civ. P. 5(d)(1); D.C.COLO.LCivR 5.3(a)), but the Bank did not seek to strike them from the docket.

§ 38-38-702. Nor did the Bank have to prove the debt to the state court that approved the foreclosure. "[T]he Rule 120 hearing is designed to address, in summary fashion, issues related *specifically to the existence of a default.*" *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1190 (10th Cir. 2012) (emphasis original, quoting *Plymouth Capital Co. v. Dist. Court of Elbert Cnty.*, 955 P.2d 1014, 1016 (Colo. 1998)). "The Rule 120 court is empowered … to consider all relevant evidence … but a Rule 120 hearing is not the proper forum for addressing the various and complex issues that can arise in some foreclosures." *Rosenfield,* 681 F.3d at 1190 (internal quotation marks omitted, quoting *Premier Farm Credit, PCA v. W–Cattle, LLC,* 155 P.3d 504, 512 (Colo. App. 2006)).

Although *National Canada* holds the "deficiency [from the foreclosure sale] is conclusive unless the defendant pleads and proves that the sale was not conducted in a strictly fair manner," (868 P.2d at 1134-35), that conclusiveness appears to reach only the fairness of the sale price, not the amount of the debt. However, a more recent statute provides

> [a] certificate of purchase … or a certified copy thereof shall be deemed to be prima facie evidence of all statements or recitals contained therein.

C.R.S. § 38-38-405. "Prima facie" evidence is sufficient to establish a fact unless it is disproved. *In re Piercen's Estate,* 195 P.2d 725, 726 (1948). One of the items the trustee states in a certificate of purchase is the "deficiency under the evidence of debt, if any, as a result of the successful bid at sale." C.R.S. § 38-38-401(1)(e). In this case, the certificate of purchase states the deficiency amount (doc. 44-8 at p. 29 of 37; "[t]he amount of the deficiency as a result of the successful bid is $111,985.72."),[3] and Ms. Cuevas did not present contrary evidence. Her denials

---

[3] The Bank requests judicial notice of the certificate of purchase. Doc. 44-7 at p. 2 ¶ 4. The court recommends granting that request pursuant to F.R.E. 201 as to the facts contained therein that are not subject to reasonable dispute as to their accuracy and can be readily determined from sources whose accuracy cannot reasonably be questioned. *See, e.g., Cunningham v. Bank of Am., N.A.,* 12-cv-3316-MSK-GPG, 2013 WL 2455945, at *2 (D. Colo. June 6, 2013). Those facts

6

of the Bank's discovery requests suffice to avoid *conceding* the amount of the deficiency, but not to show a material fact dispute. *Cf., Seng v. Americana Invs., LLC,* No. 13-cv-01745-REB-KMT, 2014 WL 12538193, at *12 (D. Colo. July 31, 2014), *rec. adopted in relevant part,* 2014 WL 12538192 (D. Colo. Aug. 21, 2014) ("no explanation why [the defendant] denies what is owed"). If the court were to apply § 38-38-405 in literal fashion, it seems a lender could obtain deficiency judgments without ever needing to show its assertions of the amount of debt are authorized, if the defendant does not respond to a summary judgment motion.

However, the Bank does not cite C.R.S. § 38-38-405,[4] and the court has not located any published cases construing it. This provision was introduced as part of a larger revamping of the foreclosure laws in 2006. *See* HB06-1387, *Concerning Real Estate Foreclosures*. No significant legislative discussion appears to be readily available. The court must if possible construe all parts of a statute harmoniously and not make any part superfluous. *Rubin v. Islamic Republic of Iran,* 138 S. Ct. 816, 824 (2018); *Pineda-Liberato v. People*, 403 P.3d 160, 164 (Colo. 2017). Reading C.R.S. § 38-38-405 as doing away with the need for the lender to show the amount of the debt underlying its deficiency calculation would eviscerate the statute's restrictions on the amounts lenders can include in the debt. *See* C.R.S. § 38-38-107. In analogous circumstances, the Colorado Supreme Court held a statute providing a death certificate is prima facie evidence

---

include the recording stamp of the El Paso County clerk and recorder, dated October 20, 2016; the trustee's recitation of mailing notices to the grantors (Defendants), a "copy of the executed Order Authorizing Sale and the Mailing List(s) submitted to the Public Trustee for this foreclosure," and the sale price at the foreclosure sale of $361,250. Doc. 44-8 at p. 29 of 37. The court does not recommend taking notice of the amount of deficiency stated therein, as that amount depends in significant part on the amount of the debt, and the trustee does not review the accuracy or reasonableness of the lender's assertions of the amount of the debt.

[4] Subject to notice and reasonable time to respond, the court can recommend granting summary judgment on grounds not raised by a party. Fed. R. Civ. P. 56(f). If the Bank wishes to present authority regarding the effect of C.R.S. § 38-38-405 in this case, or other authority that it is not required to prove the amount of the debt in this case, it may do so in the supplement the court permits *infra*.

7

of "facts stated therein" did not encompass a coroner's statement of the cause of death.

*Lockwood v. Travelers Ins. Co.,* 498 P.2d 947, 951–53 (1972), *superseded in part on other issue*.

The court reasoned

> The coroner's death certificate statement that death resulted from accident, rather than suicide or homicide, is not based upon any supportable premise which would lend to its trustworthiness. It is no more than a conclusory statement based on hearsay and does not therefore merit judicial consideration. Even if the coroner's opinion that the death was caused by accident was inserted in the death certificate after an investigation by him, it would still constitute only his opinion and would not rise in this case to the status of 'facts' which may be considered as presumptively true in all courts.

*Lockwood,* 498 P.2d at 952. The same is true here: the public trustee does not exercise any governmental authority or discretion in reciting the amount of the deficiency. As noted above, the trustee does not review the reasonableness or accuracy of the lender's bid, and in stating the deficiency in the certificate of purchase, the trustee simply deducts the sale price from the debt the lender asserted in its bid. Therefore, the court will not interpret C.R.S. § 38-38-405 as doing away with the need for the lender to show the amount of the debt unless the defendant concedes that fact.

Rule 56(e) provides "[i]f a party fails to properly support an assertion of fact … the court may … give an opportunity to properly support … the fact." Fed. R. Civ. P. 56(e)(1). The court finds it is in the interest of judicial economy to permit the Bank to supplement the record on the amount of the debt. The Bank shall do so by **April 18, 2018**. The Bank shall serve the supplement by U.S. mail and email to Defendants. Mr. Cuevas shall not have the right to respond, as he has admitted this fact. **Ms. Cuevas** shall have **7 days** from the Bank's filing in which to respond to the supplement. The court cautions that it will not await an untimely response. Both sides are also cautioned that the court will look with disfavor on any motions to extend these deadlines because the case is set for trial to begin on June 25, 2018.

8

DATED: April 4, 2018.

BY THE COURT:

Mark L. Carman
United States Magistrate Judge